Good morning, everyone. Please be seated. We want to welcome everybody here this morning. We look forward to your arguments. Before we start with the cases, Judge Wallace and I would like to extend a very warm welcome to Judge Lasnik, who is sitting by designation. We're so pleased to have you here this morning. Thank you very much, Judge Press. We have a few cases that were submitted on the briefs. The first was Moulin v. Arnold. That case is submitted. The second was Essien v. Peary. That case is submitted as well. We are going to go in the order of the advance sheet today, and the first case that we have up is Gibbs v. LeGrand. Counsel, you may proceed. Good morning, Your Honors. Jason Carr appearing on behalf of Petitioner Appellant Gibbs. I intend to reserve a minute or time for rebuttal. So prejudice, this case really boils down to prejudice. I'm in an advantageous position here that there's been a finding of deficient performance by the Nevada Supreme Court, which was affirmed by the Federal District Court. In the ineffective assistance of counsel context, deficient performance is the higher vertical. It's where the double-deference applies. Double-deference, of course, doesn't apply to the prejudice analysis. So this case really comes down to, did the Nevada Supreme Court unreasonably apply Strickland as far as the prejudice prong goes? There's a slight argument of contrary to what the primary thrust here is, that it was an unreasonable application. And the focus of this, well, the entirety of the Nevada Supreme Court opinion is found on ER excerpts of Record 24. It's a one-paragraph decision where the Nevada Supreme Court affirms that, in fact, failing to move the sever, the counts was deficient performance, but they find that because what evidence was overwhelming, that this error wasn't prejudicial. And it's that aspect of the opinion that's crucial for this appeal and what I intend to challenge here. The prejudice in this case was extreme. And, in fact, the District Court noted that on Excerpt of Record 12, which is the pertinent portion of the lower court's ruling. It's hard to imagine a situation where deficient performance could have enacted a more prejudicial outcome or impact on the jury's deliberation here. We're talking about three counts out of 30 counts of conviction, the three drug counts, which are not at issue with the other counts, which involve the admittedly quite horrific sexual assault and lewdness counts. So we were looking at a period of time that TAPE here, which was what the DA relied on almost exclusively to prove out these sexual counts, was made six years before the alleged manufacturing evidence. So we're talking about a temporal gap here of many years. I mean, there's no question that these were completely unrelated events that TAPE just happened to have been found in proximity of the drug manufacturing evidence. Now, it's important to remember here that the – and I'm skipping here – but the weight of the evidence, of course, in the Strickland prejudice, we're looking at what was the impact on the jury's deliberation of the deficient performance versus the weight of the evidence. Here, a lot of the focus has to be on the prejudice because the prejudice was so patent. And I'll talk about the weight of the evidence here in a second, but why do I say that the prejudice was patent? Well, this is a day-and-a-half trial. This is a really quick trial. The majority of the evidence the DA presented, as I said, was this tape. And this tape – it was actually three videotapes that, if you look in the record – I don't think you have any problem convincing us that the lawyer should have asked for a severance. I don't think you have any problem with us that he'd probably be granted it. That's not rocket science. That's just true. But that's not your problem. Your problem with this case is the great deference we give to the state. It's a state problem as we see it. And our law pretty well requires us to do pretty much a straight hands-off. Now, what case would you rely upon with the facts nearest to this that we should reverse what the Supreme Court of Nevada did? In the briefing of this matter, we didn't really focus on a Ninth Circuit case with facts that were analogous to this, and maybe that was failing on our part. But this case does seem to be unique as far as the actual factual issues involved and the –  they left all of this stuff in and it went in. But that's not our point. Our point is the amount of deference we give to the state court of Nevada, the Supreme Court of Nevada. There's no question the epideference is formidable. But one of the reasons why I began the beginning of this argument with the observation that I don't have to concern my argument on the deficient performance is because that's where the double deference you hear so much about ineffective assistance comes from. Here, when you get to the – the reason why there's double deference for deficient performance is because it's presumed in general that counsel performs effectively. And then you apply the AEDPA layer to it. Here, for prejudice, there is no first presumption. We just have to apply AEDPA. Now, I completely recognize that epideference is formidable. It's probably the highest standard in the law that I know of. It's probably even higher than the reasonable doubt standard. So I accept that. But here, the Nevada Supreme Court unreasonably applied the Strickland prejudice wrong because, A, the prejudice here was extremely stark, as the district court noted, and they're wrong about the weight of the evidence. So you think the Supreme Court of Nevada is wrong when they said even if you hadn't – even if you had severed it, the evidence was so overwhelming here that there's no prejudice. That's what – that's unreasonable. And it's somewhat clearly erroneous finding a fact, but there's no reason to get into that complication. But that is what is unreasonable, this idea that the evidence on the three drug counts was overwhelming. Well, it sure looked overwhelming to me. Tell me why it's not overwhelming. That's a great question. The Nevada Supreme Court, the district court, we see in the excerpts of record time and time again, they rely on the fact that our client allegedly confessed to the crime at the time the search warrant was executed at the home. And this was to Detective Martin. And this is the important part of the record on page 185 to 88, which is the cross-examination about whether Gibbs actually did confess to the crime. And if you read it and parse through it, it's apparent that he really didn't. And Martin basically admits that he doesn't know whether it was Doosan or Gibbs, Doosan being the codefendant, who actually testified on my client's behalf, saying he had nothing to do with this manufacturing, which is powerful. But didn't that get addressed again on the redirect where he, I think, testified fairly clearly that the defendant had admitted this? That's why I was focusing on page 188 on the rebuttal that you're talking about. And that's why I would encourage the court to read pages 185 to 88 carefully, because what Martin is not saying when he's pressed on it that Gibbs said, oh, I was involved in manufacturing. At best, what he is saying is that Gibbs said he had access to the room, which Detective Martin drew an inference means that he must have had something to do with the manufacturing. But remember, the manufacturing in this case is not out in the open. There's not, like, tubes and beakers and bunsen burners everywhere. This was all locked up in a safe. I mean, I'm sorry, in a suitcase. It wasn't the suitcase? It was all in the suitcase, the manufacturing stuff. Well, there was some in the suitcase, but there was other that was in plain view, right? That's somewhat unclear. What was in plain view seems to have been consumption-type paraphernalia. And I've looked through the record pretty carefully to get this nailed down. What exactly was in the suitcase and not in the suitcase? One thing we do know is that there was no ñ they never found meth, at least any meth that they attributed to my client. There was, like, this inert meth oil that was found. Not certain if it was in the suitcase or not. There's conflicting evidence about that. But the point is, is that you could have walked into this bedroom and not have known that there was a manufacturing operation going on. And, in fact, the state's experts said that this was not an active lab, that it had been dismantled and put inside of this suitcase. That was closed, that they had to open it in order to find this material. So the most powerful pieces of evidence against my client were that the safe was found in the same closet as the suitcase and that he allegedly confessed. And, as I said, the Nevada Supreme Court constantly referenced the confession. The district court said, well, the most powerful evidence against Gibbs is that he confessed, and it does just not appear to be the case. When you say it does not appear to be the case and you're talking about somewhat unclear or nuances in the testimony, the trier of fact didn't look at it your way, and there's certainly evidence in the record to support the guilty finding. Right, but let's look at what the trier of fact found here. As I was getting into it, this was a day-and-a-half trial. The video that they played for the jury was an hour and five minutes, and this was a video that was culled from the three videotapes to just show the sexual assaults and the sexually explicit conduct with these young children. Just an hour and a half out of a day-and-a-half trial, and this jury deliberated for two hours and 40 minutes maximum on 30 counts against my client. And so if you look at this record, there's a strong efference that the jury was just tainted by this videotape. I mean, it's hard to believe that they cogitated cogently on 30 counts. They just came, but in less than two hours and 40 minutes, although the judge said, I'm going to feed you lunch first, so it's unclear how long they deliberated. Do you have a case that will support you that we could just say, well, we are stop-clock shows, they used so much time, and therefore we know the jury didn't do the job they should, reversed? We've always left it up to the jury. I don't know of a case that would allow us to write an opinion based upon how much time they were in their deliberations and how many issues they had to decide. What's your closest case that says we can overturn, especially under Strickland analysis? The reason why I bring up that evidence, and, no, I don't have a piece directly in point there. I should. I wish that I did. But the reason why I bring that up is that what I'm trying to get at here is that the prejudicial impact of the jury having to watch this video and all this extremely prejudicial evidence of which there was overwhelming evidence of guilt on these other 27 counselors, no question, but that the jury appears to have been tainted by that. Any objective jury would have been tainted by it, and the trial evidence supports my supposition that they were tainted by it. My point is, if you don't have a case, and your broad research in preparing for this argument and preparing the case becomes even close to allowing us to do it, how would we be able to just pull that out of the air? We usually go, it's a system of law, and how do we write that opinion if you don't have any case to substantiate your position? Well, the case law in effect of assistance often talks about how it's a very fact-specific inquiry, and it's going to be particularly fact-specific when we're talking about the prejudicial impact on this jury. There is a lot of case law that does weave in the nature of the jury deliberations to determine prejudice, how long they were, how short they were. My question was, what's your best case? I don't have one, but I can supply it to the court later, but I see one that I'm out of time. Thank you, counsel. Good morning, and may it please the court, my name is Natasha Gabriel on behalf of Respondents Appellees. Your Honors, this court should affirm the district court's order because Gibbs cannot demonstrate that there was a reasonable probability of a different outcome at trial. The main point here is that there was overwhelming evidence of guilt on the drug charges without even getting into the sex-related charges. It is — there were — a jury, as the ultimate arbiters of fact, heard multiple instances where they could connect Gibbs to all of the counts that he was convicted of. And therefore, you cannot — Gibbs cannot show that the jury would not have convicted him had the severance went through and had the trial been severed. In Harrington v. Richter, the Supreme Court noted that there needs to be a reasonable probability in that the likelihood of a different outcome must be substantial, not just conceivable. Gibbs can't show that there was a substantial probability that the outcome at trial would have been different. Let me — let me just ask you a question. I don't think there's any doubt that mistake was made here. Trying these two cases together is just not following what we usually think of as a fair trial. So I'll start off with that, that you've — you got facing you that there was a really serious mistake here. Now, I understand also that there's a lot of deference paid. Do you have a case that helps us sort that out? If so, do you have — what is your best case to support your position? Your Honor, I would point to both, of course, Strickland and Harrington v. Richter. So in Strickland, yes, it's true that the Nevada Supreme Court found the first prong. But Strickland also explicitly says that we have to find both prongs in order to obtain habeas relief. It can't just be one. And then Harrington says that habeas corpus is a guard against extreme malfunctions in the state criminal justice, not just a substitute for ordinary error correction. And what the — what we're describing here is an ordinary error. Yes, it's true that the trial should have been severed, that counsel should have moved to sever. It's a little more than an ordinary error. It's a catastrophic error. But if I understand your question, your best defense is on strictly an application of Strickland. Correct, Your Honor. So the prejudice prong is what we would focus on, and you have to show a reasonable — a reasonable probability that the trial — that he would not have been convicted of the drug charges had there been a separate trial. And that's just not the case here. There was an overwhelming amount of evidence against Gibbs on the drug-related charges. And the jury heard that — heard Doosan testify that Gibbs didn't know of the drugs. So there was that evidence presented. Now, the jury weighed the detective's evidence that said Gibbs had confessed, and they weighed Doosan's testimony that Gibbs didn't know of the drugs. And they determined that it was — the evidence was strong against — beyond a reasonable doubt that he was guilty of the drug-related offenses. And Gibbs — I would like to clear the record. Detective Martin did specifically testify that Gibbs was part of the confession. I would point to excerpts of record, page 188, where the prosecutor is questioning the detective on the confession because there was a little bit of confusion. They were interviewed together. But there is testimony that said, and he — did he say, in fact, that he had access and he could go back there to help with the cooking. And Detective Martin testified he did. So there is testimony and evidence that Gibbs, in fact, did confess. And then you have the safe that was right next to the box slab. A reasonable trier of fact can connect the safe to Gibbs because he first said to detectives, this is my safe. Then he changed his story. Again, the jury is hearing all this. They can weigh whether Gibbs was — you know, which one was truthful. Was it his safe or wasn't it? It was his safe because now we open it and we have those videotapes depicting Gibbs. And then you have three paraphernalia kits to ingest methamphetamine. Also in plain view in the master bedroom, we have — this is not just in a box slab, as Petitioner is claiming. In plain view in the master bedroom, and this is on excerpts of Record Page 174, you have pipes, razor blades, and mirrors typically used in the production and use of meth. Then you have Gibbs' work badges and mail addressed to him in that same bedroom. Again, a reasonable trier of fact could make these reasonable connections that Gibbs was, in fact, he was involved in the production and the use and the trafficking, all of the charges that he was, in fact, convicted of. Let me ask a question to have you respond to the argument counsel made, that because this was a very complicated case with a lot of issues the jury had to decide, the timing indicates that the — rephrasing what counsel was saying, as these people said, we've got a child molester here, let's not spend much time on the drug case and just go through it. Of course, there's no — that's a statement. There's no case involved. But in fairness to counsel, what would be your response to his argument? I would say, Your Honor, that it's actually not a complicated case. The sex charges, although there were numerous sex charges, we have here, unlike other cases, an actual video depicting Gibbs of these heinous crimes. So that was, quote, unquote, quick, because you have the video. The video is shown to the jury. That's it. They don't have to deliberate a lot, maybe, on those portions. However, you have — then you have the drug charges. Again, this is not very complicated. You have detectives that said, We had an anonymous tip. We went into this house. We were let in. We saw, in plain view, paraphernalia all throughout the house. Then you have the testimony that they obtained a search warrant. They searched the house. They found this meth lab. It's not very complicated because this is not an investigation that spanned weeks and weeks and weeks and weeks and that needed witnesses, more witnesses to lay foundation. You have the one day and the short amount of time where detectives went in and law enforcement went in and found all of these items. So that's likely why this case was shorter and didn't need as many witnesses and likely why the jury did not deliberate for long, because, again, we have the sex charges, which likely, as Petitioner stated, that there was overwhelming evidence. So that probably didn't require a lot of deliberation, and I'm speculating here. Counsel, could I ask you — obviously you didn't try this case. The attorney general takes over. It's a local prosecutor, right? Yes, Your Honor. Do you have a mechanism for getting word back to them that they shouldn't do stuff like this? I mean, the prosecutor's job is to see that justice is done, not just to win convictions. And subjecting a defendant to both these charges in this manner was not just ineffective on the part of defense counsel in allowing it, but it was improper for, frankly, the prosecutor to seek to do it this way. Could you please let them know that it's not the kind of — you know, we don't have ineffective assistance of prosecution, but they need to know sometimes that they've made a grave error and should not repeat it again. Would you please convey that to them? I will do my best, Your Honor, to convey what you said today, and I'm sure they do watch a lot of the oral arguments. They do have an interest in these cases, so I'm sure they're hearing you now. Great. But I would just submit to the court — again, I'm speculating that had the charges been severed, and this is maybe why the prosecution didn't move for severance, the evidence might have been cross-admissible. Now, the U.S. District Court didn't necessarily agree with that argument, and I recognize that, but it could have opened the door with the way that they would have had to lay foundation on getting these tapes and getting the drugs and the safe and connecting Gibbs. It might have opened the door where, actually, in a case where the drug charges were severed, the sex assault charges might have come in as well, and I would submit that to the court. I see my time is out, and for the reasons that I've stated, I ask that this court affirm the U.S. District Court's order. Thank you. Thank you, counsel. Mr. Carr, you were hit with a lot of questions at the end, so we'll give you one minute to just wrap up, please. I greatly appreciate it. One further point that casts some doubt on the Gibbs confession, Detective Martin on pages 185, 186, he talks about how he basically overheard this alleged confession and that Detective Fletcher was the one doing the questioning. But when Detective Fletcher takes the stand, he doesn't say anything about that. In fact, he says the only thing that Gibbs told him was that he admitted that the safe was his, and this is on page 206, and then he goes on to say that then Gibbs invoked his right to counsel and refused to talk to him. So once again, Detective Mitchell, he never recorded this alleged confession. What he wrote in his police report was not a confession. So a year or so after this event, he now is trying to say that Gibbs confessed when the evidence doesn't support that. And I would just, and nor does really his statement. If you look at what he wrote in his police statement, what happens is that Gibbs admitted allegedly that he had access to the bedroom, and he drew the inference that because he had access to the bedroom, he must have been involved in the lab. That's different than a confession, different in strength and probative value. Thank you, Mr. Carr. Thank you. Thanks. Okay, the case is submitted.
judges: Wallace, Bress, Lasnik